(221 P.3d 1168)
No. 101,189

Tyron Byrd, *Appellee*, v. Kansas Department of Revenue, *Appellant*.

Opinion filed January 15, 2010.

*J. Brian Cox*, of Legal Services Bureau, Kansas Department of Revenue, of Topeka, for appellant.

*Robert D. Campbell*, of Campbell Law Office, P.A., of Atchison, for appellee.

Before Standridge, P.J., Pierron and Buser, JJ.

Standridge, J.: The Kansas Department of Revenue (KDR) appeals the district court's decision to reverse the suspension of

Tyron Byrd's driver's license. KDR asserts the district court erred in determining that the officer's certification and notice of suspension form was not properly served on Byrd because an administrative assistant, and not the arresting officer, mailed the form to Byrd. For the reasons stated below, we find the form was properly served as required by statute and thus reverse and remand for further proceedings.

## FACTS

KDR suspended Byrd's driving privileges after a blood test reflected an alcohol concentration of .28. After an administrative hearing officer affirmed his suspension, Byrd filed a petition for review in district court. One of the issues that Byrd raised in his petition—and the only issue now on appeal—was whether he was properly served with a copy of the officer's certification and notice of suspension, commonly referred to as a DC-27 form, as required by K.S.A. 2007 Supp. 8-1002(c).

At the hearing before the district court, Deputy Bryan Clark of the Atchison County Sheriff's Office, the officer responsible for arresting Byrd for driving under the influence and for requesting that he submit a blood sample for testing, testified that he did not personally mail the DC-27 form to Byrd. Based on procedures established in the sheriff's office, Clark stated that after receiving the results of a blood test he would complete the DC-27 form and submit it to an administrative assistant. The administrative assistant would then be responsible for mailing the form to the address shown on the form.

Melissa Hale, the administrative assistant responsible for mailing the DC-27 forms, corroborated Clark's testimony about the procedures established in the sheriff's office for completing and mailing the forms. Hale could not specifically remember mailing the form to Byrd, but stated that because the form had a date of March 5, 2008, on it, she must have mailed the form on that date.

There is no dispute that the DC-27 form was mailed to Byrd and that he received it. The form was admitted as plaintiff's exhibit No. 2 at trial before the district court.

At the conclusion of the hearing, Byrd argued that Clark failed to properly serve the DC-27 form on him pursuant to K.S.A. 2007 Supp. 8-1002(c) because Clark failed to mail the form himself. Byrd argued that the statute required that Clark personally place the DC-27 form in the mail. Because Clark failed to comply with K.S.A. 2007 Supp. 8-1002(c), Byrd argued that KDR did not have jurisdiction to take action against his license. Thus, he asked the district court to reverse KDR's decision to suspend his license.

In response, KDR argued that K.S.A. 2007 Supp. 8-1002(c) should not be strictly construed as requiring law enforcement officers to actually place DC-27 forms in the mail. KDR contended that as long as officers "caused" the form to be mailed through the use of administrative staff, the requirements of the statute were satisfied.

The district court held that K.S.A. 2007 Supp. 8-1002(c) required that the law enforcement officer directing administration of alcohol testing must actually place the DC-27 form in the mail. Because Clark failed to do this, the district court concluded that the service by mail requirements of the statute were not satisfied and reversed KDR's suspension of Byrd's driver's license.

KDR initially raised the following four issues for determination on appeal: (A) whether the district court erred in determining that the DC-27 form was not properly served; (B) whether Byrd preserved his right to challenge an alleged misstatement by the officer in the DC-27 form that the officer actually saw Byrd operate the vehicle; (C) whether the district court did, in fact, make a determination that the officer did not have reasonable grounds to believe that Byrd was operating the vehicle and, if so, whether that determination was made in error; and (D) whether the district court did, in fact, make a determination that the DC-27 form was improperly certified because the officer did not actually see Byrd operate the vehicle and, if so, whether that determination was made in error.

In his responsive briefing, Byrd addressed only the first issue raised by KDR in this appeal. When questioned at oral argument regarding his failure to respond to KDR issues B, C, and D, Byrd stated his intention to concede these three issues in favor of KDR.

Given Byrd's concession, the only remaining issue presented for determination in this appeal is the first issue raised by KDR: whether the district court erred in determining that the DC-27 form was not properly served.

KDR argues the district court erred when it strictly construed K.S.A. 2007 Supp. 8-1002(c) to require Deputy Clark to actually mail (*i.e.*, place in a mail box) the DC-27 form to Byrd. KDR argues that based on K.S.A. 2007 Supp. 8-1001(q), K.S.A. 2007 Supp. 8-1002(c) should be liberally construed as only requiring that Clark *cause* the DC-27 form to be mailed to Byrd. In other words, KDR contends that the doctrine of "substantial compliance" should be applied to the service by mail provisions of K.S.A. 2007 Supp. 8-1002(c) in order to find that Byrd was properly served.

To determine whether Byrd was properly served with the DC-27 form, we are required to interpret K.S.A. 2007 Supp. 8-1002(c). Interpretation of a statute is a question of law over which this court has unlimited review. *Double M Constr. v. Kansas Corporation Comm'n*, 288 Kan. 268, 271, 202 P.3d 7 (2009).

K.S.A. 2007 Supp. 8-1002(c) states:

"When the officer directing administration of the testing determines that a person has refused a test and the criteria of subsection (a)(1) have been met or determines that a person has failed a test and the criteria of subsection (a)(2) have been met, the officer shall serve upon the person notice of suspension of driving privileges pursuant to K.S.A. 8-1014, and amendments thereto. If the determination is made while the person is still in custody, service shall be made in person by the officer on behalf of the division of vehicles. *In cases where a test failure is established by a subsequent analysis of a breath, blood or urine sample, the officer shall serve notice of such suspension in person or by another designated officer or by mailing notice to the person at the address provided at the time of the test.*" (Emphasis added.)

There is no explicit language in K.S.A. 2007 Supp. 8-1002(c) allowing an officer to satisfy the service by mail requirements by simply *causing* the DC-27 form to be mailed to the person. Compare K.S.A. 2007 Supp. 8-1002(c) with K.S.A. 60-303(c)(2) ("The sheriff, party, or party's attorney *shall cause* a copy of the process and petition or other document to be placed in a sealed envelope

addressed to the person to be served in accordance with K.S.A. 60-304, and amendments thereto, with postage or other delivery fees prepaid, and the sealed envelope placed in the custody of the person or entity effecting delivery. [Emphasis added.]"). Clearly, a strict reading of K.S.A. 2007 Supp. 8-1002(c) required Clark, as "the officer directing administration of the testing," to place the DC-27 form in the mail so it could be sent to Byrd.

*The Doctrine of Substantial Compliance*

Despite Clark's failure to technically comply with K.S.A. 2007 Supp. 8-1002(c), KDR argues it was enough that Clark substantially complied with the statute's service by mail requirements when he directed Hale, an administrative assistant, to mail the form to Byrd. Under Kansas law, "substantial compliance" generally means " 'compliance in respect to the essential matters necessary to assure every reasonable objective of the statute.' [Citation omitted.]" *City of Lenexa v. City of Olathe*, 233 Kan. 159, 164, 660 P.2d 1368 (1983).

In response to KDR's argument, Byrd relies on the holding in *Anderson v. Kansas Dept. of Revenue*, 18 Kan. App. 2d 347, 355, 853 P.2d 69, *rev. denied* 253 Kan. 856 (1993), to argue that strict compliance with K.S.A. 2007 Supp. 8-1002(c) is necessary in order to achieve valid service by mail. In *Anderson*, a panel of this court held that the doctrine of substantial compliance is inapplicable to the personal service provisions of K.S.A. 8-1002(c) (Furse 1991). Although a detailed discussion of the analysis utilized by the *Anderson* court in reaching its conclusion will be helpful to the analysis in this case, we note at the outset that the statutory scheme upon which the *Anderson* court primarily relied has since been amended by the legislature.

*Post-Anderson Amendment to K.S.A. 8-1001 et seq.*

In interpreting K.S.A. 8-1002(c) (Furse 1991), the *Anderson* court relied on several cases that refused to apply the substantial compliance doctrine to notice and service provisions because, unlike the Rules of Civil Procedure contained in Chapter 60 (which allows for liberal construction and substantial compliance with its

service rules, see K.S.A. 60-102 and K.S.A. 60-204), the statutory schemes at issue in each of the cases contained no similar provisions. After the *Anderson* decision, however, the legislature added subsection (i) to K.S.A. 8-1001. L. 1993, ch. 275, sec. 1. That subsection, now found at K.S.A. 2007 Supp. 8-1001(v), states: "This act is remedial law and shall be liberally construed to promote public health, safety and welfare." Thus, as we discuss the analysis utilized by the *Anderson* court, we must be mindful of this significant amendment to the statute by the legislature.

### The Anderson Decision

In *Anderson*, the KDR suspended Anderson's license after he refused to submit to a breath test. Because Anderson refused to take the test, K.S.A. 8-1002(c) (Furse 1991) required that Anderson be personally served with the DC-27 form. On appeal to the district court, Anderson argued he was never validly served with the DC-27 form under 8-1002(c) because the officer who requested that he submit to testing did not personally serve him with the form. There was evidence presented to the district court that suggested the officer placed the DC-27 form with Anderson's possessions while Anderson was still in custody and that Anderson received the form when he collected his possessions at the time of his release. Anderson made no argument that he did not receive the form or that he did not understand it. Nevertheless, the district court reversed KDR's suspension of Anderson's license, concluding that personal service of the DC-27 form was mandatory and must be made in strict compliance with 8-1002(c). 18 Kan. App. 2d at 348.

On appeal, this court had to determine two issues: (1) whether placing the DC-27 form with Anderson's possessions constituted personal service; and (2) whether the doctrine of "substantial compliance" could be applied to the personal service requirements of 8-1002(c), making service sufficient. *Anderson*, 18 Kan. App. 2d at 348. With regard to the first issue, the *Anderson* court looked to the definition of personal service found in K.S.A. 1992 Supp. 60-303(c) (defining "personal service" as "delivering or offering to deliver a copy of the process and accompanying documents to the

person to be served") and concluded that placing the DC-27 form with Anderson's possessions did not constitute personal service as that term was defined in the statute. 18 Kan. App. 2d at 350.

With regard to whether the doctrine of substantial compliance could be applied in order to find that service was sufficient under 8-1002(c), the *Anderson* court looked primarily at two cases exploring the application of the doctrine: *Barnhart v. Kansas Dept. of Revenue*, 243 Kan. 209, 755 P.2d 1337 (1988), and *Claus v. Kansas Dept. of Revenue*, 16 Kan. App. 2d 12, 825 P.2d 172 (1991). In *Barnhart*, the Kansas Supreme Court held that the *notice* provisions of K.S.A. 1985 Supp. 8-1001(f) (now K.S.A. 2007 Supp. 8-1001[k])—given to a driver prior to asking him or her to submit to testing—were mandatory and not directory. However, the *Barnhart* court also concluded that the notices given to a driver did not need to exactly track the language of K.S.A. 1985 Supp. 8-1001(f). In other words, if the notices substantially complied with the language found in the statute, the notices were sufficient. 243 Kan. at 212-13. The court stated:

"While using the statutory language would have negated the issue now before us, it is generally recognized that substantial compliance with statutory notice provisions will usually be sufficient. *To substantially comply with the requirements of the statute, a notice must be sufficient to advise the party to whom it is directed of the essentials of the statute.*" (Emphasis added.) 243 Kan. at 213.

The *Barnhart* court concluded that the notices given to Barnhart substantially complied with the notices contained in K.S.A. 1985 Supp. 8-1001(f). Additionally, the court noted that Barnhart, who refused to take a breath test, based his decision on reasons that had nothing to do with the notices actually given to him or the notices contained in the statute. Therefore, Barnhart's arguments concerning the supposed deficiencies in the notices were merely complaints about technical irregularities. As the court noted, "[a]bsent any showing of prejudice by [Barnhart], the point lacks merit." 243 Kan. at 214.

In *Claus*, the other case discussed in detail by the *Anderson* court, a panel of this court had to determine whether the doctrine of substantial compliance could be applied to the *service* provisions contained in the Act for Judicial Review and Civil Enforcement of

Agency Actions (the Act), K.S.A. 77-601 *et seq*. Claus, who wanted to appeal the suspension of his license, served a copy of his petition for judicial review by mailing it to "Division of Vehicles-Driver Control Bureau" instead of the Secretary of Revenue, as required by K.S.A. 77-615(a) (Ensley 1989). 16 Kan. App. 2d at 13. On appeal, KDR did not deny that it received actual notice of Claus' petition and, thus, it was not prejudiced by the Secretary receiving Claus' petition. However, KDR argued that Claus failed to properly serve it under 77-615(a) and, thus, the district court lacked jurisdiction over the case. 16 Kan. App. 2d at 13.

The *Claus* panel agreed with KDR and remanded the case to the district court with directions that it dismiss Claus' petition due to a lack of jurisdiction. 16 Kan. App. 2d at 14. In reaching this decision, the panel rejected application of the substantial compliance doctrine to the facts of its case, noting that, unlike the Rules of Civil Procedure contained Chapter 60, the Act did not contain any provisions allowing for substantial compliance with its service requirements. The panel noted that a similar result was reached in *Pork Motel, Corp. v. Kansas Dept. of Health & Environment*, 234 Kan. 374, 673 P.2d 1126 (1983), and, thus, adopted the reasoning of that case.

In *Pork Motel*, also cited in *Anderson*, the Kansas Supreme Court refused to apply the substantial compliance doctrine to the service provisions found in the indirect contempt statute at K.S.A. 20-1204a(b) (Ensley) because, unlike the Rules of Civil Procedure contained in Chapter 60 (which allows for liberal construction and substantial compliance with its service rules, see K.S.A. 60-102 and K.S.A. 60-204), K.S.A. 20-1201 *et seq*. contained no similar provisions. Thus, the Supreme Court concluded that the substantial compliance doctrine could not be applied to the service provisions of K.S.A. 20-1204a(b) (Ensley); strict compliance with the statute was required. 234 Kan. at 390.

After reviewing the *Barnhart* and *Claus* opinions, the *Anderson* court concluded that the facts of its case were more similar to *Claus* because that case involved the interpretation of service provisions (in contrast to the notice provisions being interpreted in *Barnhart*). Although readily acknowledging that (1) Anderson claimed no prej-

udice from receiving the DC-27 form with his possessions at the jail; and (2) the purpose of the statute (making a person aware of his or her right to appeal the license suspension) was fulfilled under the facts of the case, the *Anderson* court held that the doctrine of substantial compliance was inapplicable to the statute because there appeared to be no authority contained in K.S.A. 8-1002(c) (Furse 1991) for applying the doctrine. Accordingly, the court affirmed the district court's decision to reverse Anderson's license suspension and dismiss the case against him. *Anderson*, 18 Kan. App. 2d at 353-55.

*K.S.A. 2007 Supp. 8-1001(q) Requires Us to Liberally Construe K.S.A. 2007 Supp. 8-1002(c) to Effectuate Its Purpose*

Byrd argues that the reasoning of *Anderson* is still correct and should be applied to his case. Because the *Anderson* court found the doctrine of substantial compliance inapplicable to the personal service provisions of K.S.A. 8-1002(c) (Furse 1991), Byrd argues this court should also find the doctrine inapplicable to the service by mail provisions found in the same statute. We disagree. This is because, as we explained earlier, the reasoning set forth by the court in *Anderson* is no longer valid given the subsequent amendment to K.S.A. 8-1001 *et seq.*

At the time the *Anderson* court was interpreting K.S.A. 8-1002(c) (Furse 1991), K.S.A. 8-1001 *et seq.* did not contain any provision for applying the doctrine of substantial compliance to its service provisions. Thus, *Anderson*'s reliance upon *Pork Motel* and *Claus* was correct because those cases also refrained from applying the doctrine to statutes (K.S.A. 20-1201 *et seq.* and K.S.A. 77-601 *et seq.*) that did not contain any statutory provisions allowing courts to do so. As noted earlier, however, the legislature added subsection (i) to K.S.A. 8-1001 after the *Anderson* decision was issued. L. 1993, ch. 275, sec. 1. That subsection, now found at K.S.A. 2007 Supp. 8-1001(v), states: "This act is remedial law and shall be liberally construed to promote public health, safety and welfare." This rule of liberal construction was specifically acknowledged and applied to 8-1002(c) in *Ashley v. Kansas Dept. of Revenue*, 38 Kan. App. 2d 421, 428, 166 P.3d 1060 (2007); *Enslow v. Kansas Dept.*

*of Revenue,* 26 Kan. App. 2d 953, 955, 996 P.2d 361 (2000); and *State v. Counseller,* 22 Kan. App. 2d 155, 157, 912 P.2d 757, *rev. denied* 260 Kan. 997 (1996); see also *Southwestern Bell Tel. Co. v. Kansas Corporation Comm'n,* 29 Kan. App. 2d 414, 421, 29 P.3d 424 (2001) ("A remedial statute is legislation providing the means or method whereby causes of action may be effectuated, wrongs redressed, and relief obtained. Remedial legislation is *liberally construed to effectuate the purpose* for which it was enacted." [Emphasis added.]).

What all this means is that *Anderson's* justification for not applying the substantial compliance doctrine to 8-1002(c) is no longer valid. The legislature's subsequent amendment, stating that K.S.A. 8-1001 *et seq.* is remedial law and should be liberally construed, allows for the application of the doctrine to the service by mail requirements of K.S.A. 2007 Supp. 8-1002(c). Therefore, when determining whether service by mail has been achieved under K.S.A. 2007 Supp. 8-1002(c), technical irregularities may be overlooked if the essential purpose of the statute has been fulfilled under the facts of the case. See *Barnhart,* 243 Kan. at 213; *City of Lenexa,* 233 Kan. at 164.

The relevant portion of K.S.A. 2007 Supp. 8-1002(c) states: "In cases where a test failure is established by a subsequent analysis of a breath, blood or urine sample, the officer shall serve notice of such suspension . . . by mailing the notice to the person at the address provided at the time of the test." In *Anderson,* the court stated that the purpose of K.S.A. 8-1002(c) is "to guarantee that a person whose license has been suspended is aware of his or her right to appeal." 18 Kan. App. 2d at 355. This purpose was fulfilled under the facts of this case. Though Clark did not place the DC-27 form in the mail, he directed Hale to do so. Though Hale could not specifically remember mailing the form to Byrd, she obviously did so because: (1) Byrd timely requested an administrative hearing; and (2) he introduced the DC-27 form he received in the mail into evidence at trial before the district court. Simply stated, Hale's act of placing the DC-27 form in the mail was essentially no different than if Clark had placed the form in the mail himself. Byrd has not raised (nor can he raise) any argument to show how he was

prejudiced by receiving a DC-27 form that was placed in the mail by Hale instead of Clark. Absent any showing of prejudice by Byrd, his argument lacks merit. See *Barnhart*, 243 Kan. at 214.

For these reasons, we reverse the district court's decision reinstating Byrd's driving privileges and remand for further proceedings consistent with this decision.