NOT DESIGNATED FOR PUBLICATION

No. 112,677

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JAMES EARL PAPPAN,
*Appellant/Cross-Appellee*,

v.

KANSAS DEPARTMENT OF REVENUE,
*Appellee/Cross-Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; WARREN M. WILBERT, judge. Opinion filed April 15, 2016. Affirmed.

*James Earl Pappan*, appellant/cross-appellee pro se.

*J. Brian Cox*, deputy general counsel, of Legal Services Bureau, Kansas Department of Revenue, for appellee/cross-appellant.

Before BUSER, P.J., LEBEN, AND BRUNS, JJ.

BUSER, J.:  James Earl Pappan appeals the district court's order affirming the administrative suspension of his driving privileges upon his refusal to submit to chemical testing after his arrest for driving under the influence of alcohol (DUI). Pappan contends the district court erred when it ruled that he was properly served with the Officer's Certification and Notice of Suspension (DC-27 form) when the arresting officer touched his shoulder with the form and placed the document with his personal effects.

1

After carefully considering the parties' arguments and reviewing the record on appeal, we find that under K.S.A. 2015 Supp. 8-1001(v) and our court's application of the doctrine of substantial compliance to the personal service requirements set forth in K.S.A. 2015 Supp. 8-1002(c), the district court did not err in holding that the arresting officer lawfully served Pappan with the DC-27 form. Accordingly, we affirm the district court's affirmance of the Kansas Department of Revenue's (KDR) suspension of Pappan's driving privileges.

FACTUAL AND PROCEDURAL BACKGROUND

On December 29, 2013, Officer Chris Freund of the Maize Police Department stopped Pappan's vehicle for speeding. During his encounter with Pappan, Officer Freund detected a "very strong order" of alcoholic beverages and he noticed that Pappan had slurred speech, bloodshot eyes, difficulty in communication, and poor balance. Suspecting alcohol impairment, Officer Freund asked Pappan to perform some field sobriety tests and submit to a preliminary breath test (PBT). Pappan failed the field sobriety tests and refused to submit to the PBT.

Pappan was arrested for DUI. After his refusal to submit to evidentiary chemical testing, Officer Freund filed a DC-27 form which indicated, among other things, that the officer personally served Pappan with a notice of suspension of driving privileges. Officer Freund's police report also contained the following statement: "I completed the DC-27 Certification and Notice of Suspension. At 0430 hours, I personally served Pappan his pink copy, which touched his left shoulder."

The day after his arrest, Pappan requested an administrative review of his suspension. As a result, on May 23, 2014, the KDR held a hearing wherein Pappan argued "[i]mproper service of [the] DC-27" and he challenged the results of the field

2

sobriety testing. The hearing officer denied Pappan's claims and affirmed the administrative suspension of Pappan's driving privileges.

On June 2, 2014, Pappan filed a pro se petition for judicial review in the Sedgwick County District Court. A trial de novo was held on September 8, 2014, and the court heard testimony from Officer Freund and Pappan regarding service of the DC-27 form.

Officer Freund testified that he personally served Pappan at the law enforcement center by touching the DC-27 form to Pappan's left shoulder. Moreover, according to the officer, Pappan could have taken the DC-27 form with his left hand had he so desired. Officer Freund then folded the DC-27 form in half and slid it inside the plastic bag containing Pappan's personal property. Of note, Pappan's inmate property receipt listed the following items: "Black wallet, a key fob, black, blue jeans, blue shirt, blue jacket, brown shoes, black Samsung Verizon cell phone, copy of the DC70, *a pink copy of* [*the*] *DC*[-]*27*, an Intox readout, note for where car is, and $7.75 cash." (Emphasis added.)

Officer Freund testified that Pappan was "[g]enerally uncooperative" with him and the staff during the traffic stop and booking process, and because Pappan twice refused to sign the inmate property receipt, the jail was unable to take custody of his belongings. Consequently, Pappan's property was taken to the Maize Police Department and placed in a storage locker for him to retrieve following his release from the jail. Had Pappan signed the inmate property receipt, jail staff would have returned his property to him immediately upon his release from the facility.

Pappan also testified at the trial. He confirmed that Officer Freund did touch his shoulder with the DC-27 form, but he testified the officer did not give him an opportunity to take it. Additionally, Pappan acknowledged that Officer Freund placed the DC-27 form in his property bag and he received the form on the day after his arrest when he went to the Maize Police Department to retrieve his belongings. Although Pappan said the 1-day

3

delay did not prejudice his right to request an administrative hearing, he noted he was unable to drive until he possessed the DC-27 form because it was his temporary driver's license.

Pappan argued that Officer Freund did not satisfy the personal service requirement set forth in K.S.A. 2015 Supp. 8-1002(c). He claimed that Officer Freund's touching his shoulder with the DC-27 form was insufficient and the officer was required to place the form in Pappan's hand. Pappan also challenged putting the DC-27 form in his inmate property bag because in order for the form to be immediately available upon his release, he would have had to acknowledge that the property belonged to him and "signing for potential evidence is against [his] Fifth Amendment right" not to incriminate himself.

At the conclusion of the hearing, the district court affirmed the administrative suspension of Pappan's driving privileges. In particular, the district judge found that Officer Freund effected lawful personal service. The district judge explained his ruling to Pappan:

> "There have been instances where people have tried to refuse service and they won't take it from the process server's hands and say I haven't been served. The courts have ordered and routinely decided and opined that there was actual service, and he touched you on the shoulder, which is a physical act of touching you and saying I have made contact with you and this is your DC[-]27. . . .[H]e filled it out in your presence, he touched you on the shoulder, he put it in your physical property with everything else that was going to be checked safe and secure until you were released from jail, if you signed and acknowledged that that was your personal property.
>      "When you didn't, the jail wasn't going to take responsibility for it, because you didn't acknowledge that that was the property when you were taken into custody.
>      . . . .
> "Officer Freund did the only thing he could under the circumstances and took it back to the Maize Police Department and put it in a locker where he could secure it and testify

4

that it was kept in a safe, secure place until you came to claim it, and it's not a violation of your Fifth Amendment."

Pappan filed a timely appeal. The State filed a cross-appeal challenging our court's subject matter jurisdiction to hear Pappan's appeal.

PERSONAL SERVICE OF THE DC-27 FORM

On appeal, Pappan contends the district court erred when it ruled that Officer Freund complied with the personal service requirement set forth in K.S.A. 2015 Supp. 8-1002(c) by touching Pappan's shoulder with the DC-27 form and placing the form in a plastic bag with his personal belongings. Interpretation of a statute is a question of law over which we exercise unlimited review. *Golden Rule Ins. Co. v. Tomlinson*, 300 Kan. 944, 955, 335 P.3d 1178 (2014).

As a threshold matter, the KDR argues in its cross-appeal that our court lacks subject matter jurisdiction to review this issue because Pappan did not sufficiently raise it in his petition for judicial review. Pappan did not respond to this argument. However, in his pro se petition, among other claims, Pappan generally asserted the KDR had no jurisdiction to suspend his license because "the administrative hearing did not provide due process of the law. The procedure and decision-making process of the agency was unlawful."

Subject matter jurisdiction, which is vested by statute, "establishes the court's authority to hear and decide a particular type of action." *Pieren-Abbott v. Kansas Dept. of Revenue*, 279 Kan. 83, 92, 106 P.3d 492 (2005). If the district court lacks jurisdiction to enter an order, an appellate court does not acquire jurisdiction over the subject matter on appeal. *Ryser v. State*, 295 Kan. 452, 456, 284 P.3d 337 (2012). Whether jurisdiction

5

exists is a question of law over which this court's scope of review is unlimited. *Frazier v. Goudschaal*, 296 Kan. 730, 743, 295 P.3d 542 (2013).

Appeals from the administrative suspension of driver's licenses are subject to review under the Kansas Judicial Review Act (KJRA), K.S.A. 77-601 *et seq. Kingsley v. Kansas Dept. of Revenue*, 288 Kan. 390, 396, 204 P.3d 562 (2009). According to K.S.A. 2015 Supp. 77-614(b)(6), a petition for judicial review "shall set forth . . . the petitioner's reasons for believing that relief should be granted[.]" In *Bruch v. Kansas Dept. of Revenue*, 282 Kan. 764, 784-85, 148 P.3d 538 (2006), *disapproved on other grounds by Sloop v. Kansas Dept. of Revenue*, 296 Kan. 13, 290 P.3d 555 (2012), our Supreme Court held that the "petition for review is jurisdictional and the failure to comply with the pleading requirements set forth in K.S.A. 77-614(b) precludes a litigant's statutorily granted right of appeal." Then, in *Kingsley*, the Supreme Court reiterated the jurisdictional nature of a petition for judicial review and explained that under K.S.A. 77-614(b)(6), "a petition for judicial review must set forth the specific issues that will be raised before the district court." 288 Kan. at 405. The court subsequently found that "a petition for judicial review strictly complies with K.S.A. 77-614(b)(6) when the reasons for relief set forth in the petition give the court and the agency notice of the issues that will be raised." 288 Kan. at 406.

Only months after our Supreme Court decided *Kingsley*, however, our legislature amended K.S.A. 77-614 by amending subsection (c), which provides:  "Failure to include some of the information listed in subsection (b) in the initial petition does not deprive the reviewing court of jurisdiction over the appeal. Leave to supplement the petition with omitted information required by subsection (b) shall be freely given when justice so requires." See L. 2009, ch. 109, sec. 26.

Based on K.S.A. 2015 Supp. 77-614(c), we are persuaded that Pappan's failure to specifically articulate the personal service issue within his petition for review does not

deprive our court of jurisdiction. In his petition, Pappan did reference a failure to provide due process of law and unlawful procedural processes, which generally includes matters such as service of process. Moreover, the record shows the district court and the KDR had notice that Pappan planned to raise this issue because Pappan pursued this argument at the administrative hearing level, and in its pretrial statement, the KDR listed "[i]mproper service of form DC-27 notice of suspension" among the various "issues of fact and law to be decided by the [c]ourt." As a result, we will review the merits of Pappan's arguments.

K.S.A. 2015 Supp. 8-1002(c), which sets forth the procedures that govern service of the DC-27 form upon drivers, provides in relevant part:

> "When the officer directing administration of the testing determines that a person has refused a test and the criteria of subsection (a)(1) have been met or determines that a person has failed a test and the criteria of subsection (a)(2) have been met, *the officer shall serve upon the person notice of suspension of driving privileges* pursuant to K.S.A. 8-1014, and amendments thereto. If the determination is made *while the person is still in custody, service shall be made in person by the officer* on behalf of the division of vehicles. (Emphasis added.)

"Though not expressly stated by statute, several opinions of this court treat the [KDR]'s jurisdiction to suspend driving privileges as dependent on proper service of the suspension notice. [Citations omitted.]" *High v. Kansas Dept. of Revenue*, No. 103,260, 2010 WL 5490738, at *2 (Kan. App. 2010) (unpublished opinion). See *Byrd v. Kansas Dept. of Revenue*, 43 Kan. App. 2d 145, 147, 221 P.3d 1168 (2010), *aff'd* 295 Kan. 900, 287 P.3d 232 (2012) (discussing Byrd's improper-service argument as relating to jurisdiction); *Ashley v. Kansas Dept. of Revenue*, 38 Kan. App. 2d 421, 427, 166 P.3d 1060 (2007) (notice of suspension "sets in motion the substantive administrative and judicial process by which a driver's license suspension determination is made"). Because administrative agencies have no inherent powers and gain their authority solely by

7

statutory grant, an agency can lose jurisdiction if it does not follow the procedures set out by statute. *High*, 2010 WL 5490738, at *2 (citing *Ft. Hays St. Univ. v. University Ch. Am. Ass'n of Univ. Profs.*, 290 Kan. 446, Syl. ¶ 1, 228 P.3d 403 [2010]).

Pappan contends the KDR was without jurisdiction to suspend his driver's license because Officer Fruend did not strictly comply with the personal service requirements set forth in K.S.A. 2015 Supp. 8-1002(c) when the officer touched Pappan's shoulder with the DC-27 form, rather than placing it in his hands. What is meant by personal service? A legal reference guide, Black's Law Dictionary 521, 1327 (10th ed. 2014) defines "personal service" as "[a]ctual delivery of the notice or process to the person to whom it is directed" and "delivery" as "[t]he formal act of voluntarily transferring something; esp., the act of bringing goods, letters, etc. to a particular person or place." In the present case, Officer Fruend both personally touched Pappan's shoulder with the DC-27 form and provided a copy of the form to Pappan by placing it inside the plastic bag containing Pappan's personal belongings.

Pappan contends that Officer Freund's actions did not constitute lawful personal service. In support, he relies upon *Anderson v. Kansas Dept. of Revenue*, 18 Kan. App. 2d 347, Syl. ¶ 3, 853 P.2d 69, *rev. denied* 253 Kan. 856 (1993), wherein a panel of our court found the "doctrine of 'substantial compliance' is not applicable to the personal service provision of K.S.A. 8-1002(c) [Furse 1991]" because the Kansas Implied Consent Law, does not contain any statutory provisions authorizing its use and, thus, placing the DC-27 form among the driver's personal belongings does not constitute personal service. "Under Kansas law, 'substantial '"compliance' generally means """compliance in respect to the essential matters necessary to assure every reasonable objective of the statute." [Citations omitted.]'" *Byrd*, 43 Kan. App. 2d at 149. Based on the panel's determination that Kansas "requires strict adherence to the legislative mandate of personal service," our court also found that an officer's failure to give the driver proper notice is "prejudicial in and of

8

itself" and required dismissal of the case on jurisdictional grounds. *Anderson*, 18 Kan. App. 2d 347, 354-55.

As the KDR points out, however, shortly after the *Anderson* decision, our legislature added subsection (i) to K.S.A. 8-1001. See L. 1993, ch. 275, sec. 1. That subsection, now found at K.S.A. 2015 Supp. 8-1001(v), provides: "This act is remedial law and shall be liberally construed to promote public health, safety and welfare." Our court has observed:

> "Remedial laws require liberal construction. Liberal construction involves construing remedial legislation "'to effectuate the purpose for which it was enacted'"; and, where a literal construction would defeat the legislative purpose, a statute should be construed according to its reason and spirit. [Citation omitted.]" *Fraser v. Kansas Dept. of Revenue*, No. 110,817, 2014 WL 7152337, at *6 (Kan. App. 2014) (unpublished opinion).

When the legislature revises an existing law, our court ordinarily presumes the legislature intended to change the law as it existed prior to the amendment. See *Brennan v. Kansas Insurance Guaranty Ass'n.*, 293 Kan. 446, 458, 264 P.3d 102 (2011). Accordingly, "[w]hat all this means is that *Anderson*'s justification for not applying the substantial compliance doctrine to 8-1002(c) is no longer valid." *Byrd*, 43 Kan. App. 2d at 154.

Given the remedial nature of K.S.A. 2015 Supp. 8-1002(c) and K.S.A. 2015 Supp. 8-1001(v)'s express mandate for liberal construction, several panels of our court have adopted the doctrine of substantial compliance. See *e.g.*, *Byrd*, 43 Kan. App. 2d at 154 ("The legislature's subsequent amendment, stating that K.S.A. 8-1001 *et seq.* is remedial law and should be liberally construed, allows for the application of the doctrine to the service by mail requirements of K.S.A. 2007 Supp. 8-1002(c). Therefore, when determining whether service by mail has been achieved under K.S.A. 2007 Supp. 8-

9

1002(c), technical irregularities may be overlooked if the essential purpose of the statute has been fulfilled under the facts of the case. [Citations omitted.]").

In particular, our court has applied the doctrine of substantial compliance to cases, like the one on appeal, involving personal service of the DC-27 form. *Kugler v. Kansas Dept. of Revenue*, No. 106,410, 2012 WL 2045379, at *4 (Kan. App. 2012) (unpublished opinion) ("[S]ubstantial compliance applies to both service by mail and personal service under K.S.A. 2008 Supp. 8-1002[c]."); *Snyder v. Kansas Dept. of Revenue*, No. 103,767, 2011 WL 1196917, at *3 (Kan. App. 2011) (unpublished opinion), *rev. denied* 293 Kan. 1108 (2011) ("Snyder argues that *Byrd* applies only to cases involving service by mail. While *Byrd* dealt with service by mail, the statutory change calling for liberal construction of the statute 'to promote public health, safety and welfare' applies to the act in its entirety. Thus, the legislative change applies equally to cases involving substantial compliance with the requirement for personal service.").

In particular, the *Fraser* case is especially helpful in resolving this appeal. The licensee in *Fraser* claimed the district court erred when it found, based on its interpretation of K.S.A. 2013 Supp. 8-1002(c), that the arresting officer properly served him with the DC-27 form by personal service. See *Fraser*, 2014 WL 7152337, at *2, 5. At Fraser's trial de novo, the officer testified that he had "no independent recollection of personally serving Fraser," but on the form itself, the officer certified that a "copy of the DC-27 'is being served on [Fraser] on 12-11-2010 by . . . personal service'" and on another report the officer indicated that he "'completed a DC-27 and placed a pink copy in [Fraser's] hands.'" 2014 WL 7152337, at *2. For his part, Fraser testified that jail staff handed him the DC-27 form when he posted his bond within 10 minutes of being booked. Based on these facts, the district court determined that the officer properly served Fraser: "'[T]he DC-27 was . . . placed in [Fraser's] personal property and given to him personally when he was released. . . . [T]hat is sufficient for personal service. There is not a

10

requirement that the officer personally place the paper in the hands.'" 2014 WL 7152337, at *5.

On appeal, our court rejected Fraser's contention that K.S.A. 2013 Supp. 8-1002(c) requires strict compliance. 2014 WL 7152337, at *6-7. The panel explained:

"We agree with Fraser that the language of K.S.A. 2013 Supp. 8-1002(c) is not ambiguous. However, in determining whether the district court properly found the service requirement contained within it had been satisfied, one must also consider the provisions of K.S.A. 2013 Supp. 8-1001(v) which Fraser has not mentioned. That section provides that this 'act is a remedial law and shall be liberally construed to promote public health, safety and welfare.'

". . . K.S.A. 2013 Supp. 8-1002(c) is a part of the statutory process that insures a driver whose license is going to be suspended for refusing to take a breath test receives immediate and personal notice of the suspension so as to avail himself or herself of the rights available under the law to appeal the suspension. Remedial laws require liberal construction. . . . Other panels of this court have also determined the purpose of K.S.A. 8-1002(c) is to ensure a person whose license has been suspended has notice of his or her right to appeal. [Citations omitted.]

"Here, Fraser testified he received the DC-27 within 10 minutes of being booked into jail. Clearly he was aware of his right to appeal because he exercised that right through his attorney 3 days after being arrested. These facts indicate that the service of the DC-27 on Fraser was effective and the purposes of the notice statute fulfilled." 2014 WL 7152337, at *6-7.

We find that based on the plain language of K.S.A. 2015 Supp. 8-1001(v) and our court's consistent application of the doctrine of substantial compliance to the personal service requirements, that it is appropriate to apply the doctrine of substantial compliance to the facts of this case. Here, the evidence clearly demonstrated that Officer Freund substantially complied with the essential requirements necessary to assure every reasonable objective of the statute when he touched Pappan's shoulder with the DC-27 form and placed the form with his personal belongings.

11

As noted in *Fraser*, the purpose behind K.S.A. 2015 Supp. 8-1002(c) is to ensure that an individual whose license has been suspended receives notice of their right to appeal the suspension. *Fraser*, 2014 WL 7152337, at *6 (citing *Byrd*, 43 Kan. App. 2d at 154; *Anderson*, 18 Kan. App. 2d at 355). At trial, Pappan acknowledged that Officer Freund personally touched him with the DC-27 form, and when Pappan retrieved his personal belongings the next day he took possession of the form. Pappan also conceded that the manner in which Officer Freund served him did not prejudice his right to request an administrative hearing. In fact, Pappan was obviously aware of his right to appeal the suspension, as Officer Freund arrested him on December 29, 2013, and Pappan requested an administrative hearing, through his attorney, on December 30, 2013—the very next day.

In conclusion, we find the district court did not err when it affirmed the administrative suspension of Pappan's driving privileges because Officer Freund substantially complied with the personal service requirement set forth in K.S.A. 2015 Supp. 8-1002(c) when he touched Pappan's shoulder with the DC-27 form and placed it with his personal belongings.

Affirmed.