No. 101,189

TYRON BYRD, *Appellee*, v. KANSAS DEPARTMENT OF REVENUE, *Appellant*.

(287 P.3d 232)

Opinion filed October 26, 2012.

*J. Brian Cox*, senior litigation attorney, of Legal Services Bureau, Kansas Department of Revenue, argued the cause and was on the briefs for appellant.

*Brian L. Leininger*, of Leininger Law Offices, of Overland Park, argued the cause, and *Robert D. Campbell*, of Campbell Law Office, P.A., of Atchison, was on the brief for appellee.

The opinion of the court was delivered by

LUCKERT, J.: K.S.A. 2011 Supp. 8-1002(c) provides that where a driver's license is being suspended because an illegal blood-alcohol level has been established by a blood test, "the officer shall serve notice of such suspension in person or by another designated officer or *by mailing the notice* to the person at the address provided at the time of the test." (Emphasis added.) This driver's license suspension case involves the question of whether the phrase "mailing the notice" requires the officer who conducted the alcohol testing to personally deliver the notice of a driver's license suspension to the custody of a mail carrier or may instead follow his or her office's standard operating procedures for outgoing mail, as was done in this case, and thereby mail the notice.

We hold that K.S.A. 2011 Supp. 8-1002(c) imposes the responsibility to ensure mailing on the officer but does not require the officer to personally address, stamp, and place in a mailbox an envelope containing the notice. In this case, an Atchison County Sheriff's officer ensured mailing by following the sheriff's standard operating procedure for mailing the notice and, thus, fulfilled the statutory requirement. Because this conclusion is contrary to the decision of the district court, we reverse the district court and affirm the decision of the Court of Appeals that also reversed the district court, although we reach our holding through a different analysis than that of the Court of Appeals. We remand the case to the district court for further proceedings.

## FACTS AND PROCEDURAL BACKGROUND

On April 17, 2008, the Kansas Department of Revenue (KDR) suspended Tyron Byrd's driving privileges after a blood test established he had a blood-alcohol concentration of .28 and an officer certified that Byrd had operated or attempted to operate a motor vehicle while intoxicated. An administrative hearing officer affirmed the suspension, and then Byrd filed a petition in district court seeking review of the administrative decision. One of the issues raised by Byrd was whether he was properly served with a copy of the arresting officer's certification and notice of suspension form, commonly referred to as a DC-27 form, as required by K.S.A. 2007 Supp. 8-1002(c).

At a hearing before the district court, Deputy Bryan Clark of the Atchison County Sheriff's Office, the officer responsible for arresting Byrd for driving under the influence, indicated he initialed a portion of the DC-27 form that reads: "A copy of this document which contains a Notice of Driver's License Suspension is being served . . . by mailing by first-class mail to the address shown above." Clark testified that after completing the form he followed "the sheriff's office mailing process." This process, as Clark explained it, required him to place the completed form and the accompanying file in the administrative assistant's box. The administrative assistant then printed the envelope, placed the appropriate postage on the envelope, and placed the envelope in the mailbox.

Clark indicated that "she's able to print off the addresses on her computer. We don't have access to that. So she completes that." He also indicated he does not have access to the postage meter. He explained that when he certified that a copy of the DC-27 form "is being served" by mail he did so because "I mailed it by our mailing system."

Melissa Hale, the administrative assistant responsible for mailing the DC-27 form, corroborated Clark's testimony about the procedures established in the sheriff's office for completing and mailing the form. She explained the procedure once she receives a completed DC-27 form from an officer, stating:

"We make sure everything is completed on it. Usually the undersheriff or sheriff sometimes do this to make sure everything is completed. Then I copy the lab results—the first page of the lab results—and prepare the envelope and put them in the envelopes and print the papers and put the postage on them and then mail them."

One copy is mailed to the driver, another to the KDR.

With regard to the present case, Hale could not specifically remember mailing the form to Byrd, but she stated that under the "standard operating procedure" of the department the form would have been mailed on March 5, 2008, the date of mailing as certified by Clark. There is no dispute that the DC-27 form was mailed to Byrd and that he received it.

At the conclusion of the hearing before the district court, Byrd argued that Clark failed to properly serve the DC-27 form on him under K.S.A. 2007 Supp. 8-1002(c) because Clark failed to mail the form himself as required by the statute. Because Clark failed to comply with the statute, Byrd argued that the KDR did not have jurisdiction to take action against his license. Thus, he asked the district court to reverse the KDR's decision to suspend his driving privileges.

In response, the KDR argued that K.S.A. 2007 Supp. 8-1002(c) should not be strictly construed as requiring a law enforcement officer to actually place a DC-27 form in a mailbox. The KDR contended that as long as officers caused the form to be mailed

through the use of administrative staff, the service-by-mail requirements of the statute are satisfied.

The district court agreed with Byrd's strict reading of the statute and held that K.S.A. 2007 Supp. 8-1002(c) requires that the law enforcement officer directing administration of alcohol testing must actually place the DC-27 form in the mail. Because Clark failed to do this, the district court concluded the service-by-mail requirements of the statute were not satisfied and reversed the KDR's suspension of Byrd's driving privileges.

The KDR appealed to the Court of Appeals. The Court of Appeals agreed with the district court's conclusion that Clark failed to strictly comply with the statute because he did not personally place the notice in the mail. See *Byrd v. Kansas Dept. of Revenue*, 43 Kan. App. 2d 145, 148-49, 221 P.3d 1168 (2010). Nevertheless, the Court of Appeals reversed the district court, concluding that Clark had accomplished the purpose of the statute and could be deemed to have mailed the DC-27 under the doctrine of substantial compliance. *Byrd*, 43 Kan. App. 2d at 154-55.

In reaching this conclusion, the Court of Appeals first noted: "There is no explicit language in K.S.A. 2007 Supp. 8-1002(c) allowing an officer to satisfy the service by mail requirements by simply *causing* the DC-27 form to be mailed to the person." *Byrd*, 43 Kan. App. 2d at 148. The court compared the language of K.S.A. 2007 Supp. 8-1002(c) with K.S.A. 60-303(c)(2), which stated:

"The sheriff, party, or party's attorney shall cause a copy of the process and petition or other document to be placed in a sealed envelope addressed to the person to be served in accordance with K.S.A. 60-304, and amendments thereto, with postage or other delivery fees prepaid, and the sealed envelope placed in the custody of the person or entity effecting delivery." *Byrd*, 43 Kan. App. 2d at 148-49.

See K.S.A. 2011 Supp. 60-303(c)(2) ("The sheriff, party, or party's attorney *must give to the person or entity effecting delivery* a copy of the process and petition or other document in a sealed envelope, with postage or other delivery fees prepaid, addressed to the person to be served in accordance with K.S.A. 60-304, and amendments thereto."). The court noted that K.S.A. 2007 Supp. 8-1002(c) does not allow an officer to simply cause the DC-27 form

to be mailed and concluded this meant the officer must physically place the notice in the custody of the entity effecting delivery. *Byrd*, 43 Kan. App. 2d at 148-49.

Nevertheless, the Court of Appeals adopted the KDR's alternative argument that it was enough that Clark substantially complied with the statute's service-by-mail requirement. *Byrd*, 43 Kan. App. 2d at 149 (quoting *City of Lenexa v. City of Olathe*, 233 Kan. 159, 164, 660 P.2d 1368 [1983]) (" 'substantial compliance' generally means "compliance in respect to the essential matters necessary to assure every reasonable objective of the statute" ' "). In accepting the KDR's argument, the court rejected Byrd's argument that application of the substantial compliance doctrine was contrary to the holding in *Anderson v. Kansas Dept. of Revenue*, 18 Kan. App. 2d 347, 355, 853 P.2d 69, *rev. denied* 253 Kan. 856 (1993). The court acknowledged that Byrd's argument was supported by *Anderson* but concluded that "the reasoning set forth by the court in *Anderson* is no longer valid given the subsequent amendment to K.S.A. 8-1001 *et seq.*" *Byrd*, 43 Kan. App. 2d at 153. Specifically, the *Byrd* court cited an amendment that was effective just months after the *Anderson* decision, in which "the legislature added subsection (i) to K.S.A. 8-1001 . . . . L. 1993, ch. 275, sec. 1"; the *Byrd* court continued, noting: "That subsection, now found at K.S.A. 2007 Supp. 8-1001(v), states: 'This act is remedial law and shall be liberally construed to promote public health, safety and welfare.' " *Byrd*, 43 Kan. App. 2d at 153. The court reasoned that this provision allowed for the application of the substantial compliance doctrine to the service-by-mail requirement of K.S.A. 2007 Supp. 8-1002(c). Therefore, the court concluded that "when determining whether service by mail has been achieved under K.S.A. 2007 Supp. 8-1002(c), technical irregularities may be overlooked if the essential purpose of the statute has been fulfilled under the facts of the case. [Citations omitted.]" *Byrd*, 43 Kan. App. 2d at 154.

The *Byrd* court cited *Anderson* for its holding regarding the purpose of K.S.A. 2007 Supp. 8-1002(c), which is " 'to guarantee that a person whose license has been suspended is aware of his or her right to appeal.' 18 Kan. App. 2d at 355." *Byrd*, 43 Kan. App. 2d at 154. The *Byrd* court concluded:

"This purpose was fulfilled under the facts of this case. Though Clark did not place the DC-27 form in the mail, he directed Hale to do so. Though Hale could not specifically remember mailing the form to Byrd, she obviously did so because: (1) Byrd timely requested an administrative hearing; and (2) he introduced the DC-27 form he received in the mail into evidence at trial before the district court. Simply stated, Hale's act of placing the DC-27 form in the mail was essentially no different than if Clark had placed the form in the mail himself. Byrd has not raised (nor can he raise) any argument to show how he was prejudiced by receiving a DC-27 form that was placed in the mail by Hale instead of Clark. Absent any showing of prejudice by Clark, his argument lacks merit. [Citation omitted.]" *Byrd*, 43 Kan. App. 2d at 154-55.

Byrd filed a petition for review, which this court granted. We have jurisdiction over this appeal under K.S.A. 20-3018(b).

## ANALYSIS

Our review of the Court of Appeals' decision presents a question of statutory interpretation, which is a question of law over which this court exercises unlimited review. *143rd Street Investors v. Board of Johnson County Commr's*, 292 Kan. 690, 698, 259 P.3d 644 (2011). Well-known principles of statutory interpretation apply. The most fundamental of these rules is that the intent of the legislature governs if that intent can be ascertained. *143rd Street Investors*, 292 Kan. at 698. The first step in ascertaining legislative intent is to examine the statutory language, giving common words their ordinary meanings. *State v. Raschke*, 289 Kan. 911, 914, 219 P.3d 481 (2009). If upon examination the statute's language or text is unclear or ambiguous, a court may use legislative history, canons of construction, or other background considerations to construe the legislature's intent. *143rd Street Investors*, 292 Kan. at 698.

In applying these rules to K.S.A. 2011 Supp. 8-1002(c), which has the same language as the 2007 version, we first attempt to ascertain the legislature's intention by examining the statutory language—"the officer shall serve notice of such suspension in person or by another designated officer or *by mailing the notice* to the person at the address provided at the time of the test." In doing so, we must begin with the ordinary meaning of the verb "mail," which is:

"1. To deposit (a letter, package, etc.) with the U.S. Postal Service; to ensure that letter, package, etc. is properly addressed, stamped, and placed into a receptacle for mail pickup. 2. To deliver (a letter, package, etc.) to a private courier service that undertakes delivery to a third person, often within a specified time." Black's Law Dictionary 972 (8th ed. 2004).

The first alternative—to deposit the DC-27 form with the United States Postal Service—was applied by the district court and the Court of Appeals. Neither court considered the implications of the second alternative—"*to ensure* that a letter, package, etc. is properly addressed, stamped, and placed into a receptacle for mail pickup." (Emphasis added.) Yet, this use of the word is common in business and organizational settings, such as a sheriff's office or law firm, where a person depends on the business' or organization's mail system for the performance of the physical acts of addressing an envelope, affixing postage, and delivering an envelope to the United States Postal Service or another courier. While the person who authored the item being mailed does not perform the physical acts associated with the mailing, the person is responsible for the mailing—in other words, guarantees or ensures the mailing—by using the standard office procedures. In this sense, the word "mail" does not require that the person responsible for the mailing be the one who physically deposits the item into the custody of the entity responsible for delivery.

In light of these variations in meaning, the legislature's use of the word "mailing" is ambiguous. The legislature did not provide further guidance by defining the term or using language like that found in K.S.A. 2011 Supp. 60-303(c). *Cf.* K.S.A. 8-1433 (defining "mail"; means to "deposit in United States mail properly addressed and with postage prepaid"); K.S.A. 31-150a(a) (incorporating K.S.A. 2011 Supp. 60-103 for definition of restricted mail); K.S.A. 43-166 (same); K.S.A. 58-30a15 (same); K.S.A. 2011 Supp. 60-2803(a) (same).

Without specific guidance from the legislature that clarifies the ambiguity, we turn to legislative history, canons of construction, and other background considerations to ascertain legislative intent. Regarding legislative history, the parties have not cited and we have not found any information that assists in determining what the

legislature intended. Turning to canons of construction, only one applies; that is the canon that requires a court to construe a statute in a reasonable manner. See *Board of Miami County Comm'rs v. Kanza Rail-Trails Conservancy, Inc.*, 292 Kan. 285, 322-23, 255 P.3d 1186 (2011).

As we consider a reasonable application of the potential definitions of "mail"—one requiring the officer to physically place the DC-27 in the mail and the other requiring the officer to ensure that the DC-27 is properly addressed, stamped, and mailed—we conclude the legislature did not intend for a law enforcement officer to have to physically undertake the clerical tasks associated with mailing a notice. Rather, the legislature intended to place the responsibility on the certifying officer to ensure that the DC-27 is mailed. In order to fulfill that responsibility, there must be a process and procedure in place for the mailing of a DC-27 form, and the officer must take responsibility for ensuring that the process and procedure are followed.

On the record in this case, there was uncontroverted evidence that there was a policy in place—a standard operating procedure—and assigned personnel to ensure that the mailing would occur. The evidence was also uncontroverted that the policy and process were followed. Clark mailed the DC-27 to Byrd by following this procedure.

Because we apply this plain meaning to the verb "mail," we do not need to consider the effect of K.S.A. 2011 Supp. 8-1001(v) ("This act is remedial law and shall be liberally construed to promote public health, safety and welfare."). Nor do we need to consider the doctrine of substantial compliance, which unlike the Court of Appeals, we deem to be a separate doctrine from liberal construction of a statute. Instead, because there is uncontroverted evidence that Clark ensured that the DC-27 form was mailed according to standard office policy and procedure, we determine that he mailed the DC-27 form. Hence, although on different grounds, we affirm the Court of Appeals' decision to reverse the district court. We remand to the district court for consideration of Byrd's appeal of his driver's license suspension.

Judgment of the Court of Appeals reversing the district court is affirmed. Judgment of the district court is reversed and remanded for further proceedings.