NOT DESIGNATED FOR PUBLICATION

No. 119,528

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

MATTHEW ROBERT STUTSMAN,
*Appellant*,

v.

KANSAS DEPARTMENT OF REVENUE,
*Appellee*.


MEMORANDUM OPINION

Appeal from Riley District Court; MERYL D. WILSON, judge. Opinion filed March 22, 2019. Reversed.

*Daniel C. Walter*, of Walter & Walter, LLC, of Norton, for appellant.

*Ashley R. Iverson*, of Legal Services Bureau, Kansas Department of Revenue, for appellee.


Before BRUNS, P.J., MALONE and POWELL, JJ.


PER CURIAM: Matthew Robert Stutsman appeals from the district court's denial of his petition for review of the administrative action suspending his driver's license. On appeal, Stutsman claims that the DC-27 form provided to him by the officer was facially invalid and as a result did not provide the Kansas Department of Revenue with subject matter jurisdiction to administratively suspend his driver's license. Based on our review of the record on appeal, we find that the copy of the DC-27 form given to Stutsman failed to comply with the provisions of K.S.A. 2016 Supp. 8-1002 because it did not certify essential information nor was it signed by a law enforcement officer as required by

1

statute. Thus, we reverse the district court's decision upholding the administrative suspension.

FACTS

On April 22, 2017, Officer Randy Myles of the Kansas State University Police arrested Stutsman for driving under the influence of alcohol. According to Officer Myles, Stutsman rear-ended another vehicle at a stoplight. When the officer arrived at the scene of the accident, he found that Stutsman smelled of alcohol and had slurred speech, bloodshot eyes, difficulty communicating, and poor balance. Stutsman admitted to Officer Myles that had consumed alcohol.

After Stutsman failed field sobriety tests as well as a preliminary breath test, Officer Myles placed him under arrest. Stutsman was then taken to the Kansas State Police Department. Officer Myles administered a breath test using an Intoxilyzer 8000 to test Stutsman's blood-alcohol content. The test revealed a blood-alcohol count of 0.209, which was well above the legal limit.

Before releasing Stutsman, Officer Myles gave him a copy of a "Officer's Certification and Notice of Suspension"—commonly called a DC-27 form—as well as a copy of an "Implied Consent Advisory" form—commonly called a DC-70. Subsequently, Stutsman requested an administrative hearing and his suspension was upheld on June 29, 2017. Thereafter, Stutsman filed a petition for review with the district court.

The district court held a de novo hearing on April 23, 2018. At the hearing, a copy of the DC-27 form given to Stutsman was admitted into evidence as Exhibit 2. In addition, a copy of the DC-27 form provided to the Kansas Department of Revenue was admitted into evidence as Exhibit 3. Finally, a copy of the DC-27 form kept by Officer Myles was admitted into evidence as Exhibit 4.

Although all three copies were different, Exhibits 3 and 4 contained substantially identical information. However, Exhibit 2 was lacked much of the information found on the other two exhibits. In particular, Exhibit 2 does not contain:

- the officer's initials in the spaces provided on the left side of the form,
- any checkmarks in the boxes in paragraph 4 to indicate whether the form was completed because of a test refusal or a test result,
- any checkmarks in the boxes provided in paragraph 5 to indicate the reason for the contact or stop,
- any checkmarks in the boxes provided in paragraph 6 to indicate the reasonable grounds to believe Stutsman was operating or attempting to operate a motor vehicle, and
- the signature of a law enforcement officer.

Concerning the discrepancies between the copy of the DC-27 form given to Stutsman and the other versions of the DC-27 form, Officer Myles testified:

"A: Well, the copy that Mr.—originally we just received the electronic capability. At that time we were still new to it, we didn't have full knowledge of how to use the program, so the DC-27 was written on the old copy, a hard copy. It was written out. Everything was filled out correctly. From there I gave the pink copy from my hand to Mr. Stutsman. I explained the whole entire document to him. At the time he said he understood. Once he took it out of my hand we took the—well, I'm sorry, not 'we'—I took the pink copy and I put it in his property bag, being that he was go[ing] to be transported to Riley County Police Department.

"Q: And you retained the yellow copy for your records?

"A: Yes, we kept all that, and we usually scan all of the documents after we get done.

"Q: And the top white copy is submitted to KDOR?

"A: Yes. I sent it to my sergeant and kind of go through the—yes.

"Q: Sure. So pardon me. Kansas Department of Revenue received a DC-27—

"A: Uh-huh.

3

"Q: —which was vetted by KD[O]R and satisfied the statutory requirements. What is your explanation as to Mr. Stutsman's argument that his is different than the one that we received?

"A: My only explanation from that is being that it did not transfer from the top of the page down to his copy didn't transfer clearly from the carbon copies."

The district court upheld Stutsman's administrative suspension in a journal entry filed on April 30, 2018. It found that "the triplicate DC-27 form, as manually filled out by the arresting officer, substantially complied with statutory requirements and was properly served upon [Stutsman]." Specifically, the court stated that:

"[T]he white [DC-27] copy clearly ha[d] all of the appropriate boxes marked. The yellow copy that's Exhibit 4, I've closely examined it as it relates to Exhibit 3 [the white copy] and it appears to be identical other than the fact that some of [the markings] are very hard to read. And then finally you have Exhibit 2 which is the pink copy, and it on its face would appear to be different.

"However, as we know these are carbon copies and it appears to me that they simply did not—there wasn't sufficient pressure or it didn't copy from the white, to the yellow, to the pink. And it also appears that the officer then went back and wrote over what faint transfer I guess there was from the original copy so that it was legible and it would be clear to anyone who stopped Mr. Stutsman that he had a valid license to drive with his pink slip.

"Based on all of that I don't think that he was served a different copy. I think it is substantial compliance. The officer testified that the . . . breathalyzer was performed at the Kansas State Police Department. For those reasons, the Petition for Review is denied."

Stutsman timely appeals to this court.

4

On appeal, Stutsman contends on appeal that "the mistakes among the various DC-27's in this case are major, replete and undeniable." Stutsman argues that because the version of the DC-27 provided to him did not include the certification or signature of a law enforcement officer as required by K.S.A. 8-1002, the Kansas Department of Revenue did not have subject matter jurisdiction to administratively suspend his driver's license. In response, the Kansas Department of Revenue contends that this is not a case of an incomplete DC-27 but simply a matter of the law enforcement officer not applying enough pressure for the information to reach the copy of the DC-27 that was provided to Stutsman.

Subject matter jurisdiction is vested by statute and establishes the court's authority to hear and decide a particular type of action. *Wiechman v. Huddleston*, 304 Kan. 80, 86-87, 370 P.3d 1194 (2016). Parties cannot confer subject matter jurisdiction by consent, waiver, or estoppel, and parties cannot convey subject matter jurisdiction on a court by failing to object to the court's lack of jurisdiction. *Wall v. Kansas Dept. of Revenue*, 54 Kan. App. 2d 512, 513, 401 P.3d 670 (2017). If an administrative agency lacks jurisdiction, neither the district court nor an appellate court acquires jurisdiction over the subject matter on appeal. See *Rodewald v. Kansas Dept. of Revenue*, 296 Kan. 1022, 1038, 297 P.3d 281 (2013) (holding that administrative agencies must "derive . . . subject matter jurisdiction from statutory authority"); *Sandlin v. Roche Labs., Inc.*, 268 Kan. 79, 85, 991 P.2d 883 (1999) (stating that "if the trial court lacked jurisdiction, the appellate court likewise does not acquire [subject matter] jurisdiction[.]")

The question as to whether subject matter jurisdiction exists is a question of law over which this court's scope of review is unlimited. *State v. Dunn*, 304 Kan. 773, 784, 375 P.3d 332 (2016). Because subject matter jurisdiction is conferred by statute, it should be noted that the interpretation of a statute is also a question of law subject to unlimited

5

review. *Pratt v. Kansas Dept. of Revenue*, 48 Kan. App. 2d 586, 588, 296 P.3d 1128 (2013). As the parties recognize, subject matter jurisdiction may be raised at any time, whether for the first time on appeal or even on a court's own motion. *Wall*, 54 Kan. App. 2d at 513.

K.S.A. 8-1002 governs the notification and certification that must be completed by a law enforcement officer when a driver refuses to take or fails a blood-alcohol test. Moreover, K.S.A. 8-1002(g) requires the Kansas Department of Revenue, Division of Motor Vehicles, to "prepare and distribute forms for use by law enforcement officers in giving the notice required by this section." Accordingly, DC-27 forms have been prepared "as an aid to law enforcement officers, the [Division of Motor Vehicles], and an operator of a motor vehicle facing an officer's request that he or she submit to alcohol or drug testing." See *State v. Baker*, 269 Kan. 383, 385, 2 P.3d 786 (2000).

There are two primary components of the DC-27 form—notification and certification. The notification aspect arises under K.S.A. 2018 Supp. 8-1001(k) and includes information an officer must advise a driver before administering an alcohol test. On the other hand, the certification aspect arises under K.S.A. 8-1002(a) and concerns matters occurring after the test failure or test refusal has already taken place. See *State v. Baker*, 269 Kan. at 385-87.

K.S.A. 8-1002(a) requires that whenever there has been either a test failure or test refusal, a law enforcement officer must prepare and sign a certification. With regard to a test failure, K.S.A. 8-1002(a)(2) requires that the officer must certify the following:

> "(A) There existed reasonable grounds to believe the person was operating a
> vehicle while under the influence of alcohol or drugs, or both, or to believe that the
> person had been driving a commercial motor vehicle, as defined in K.S.A. 8-2,128, and
> amendments thereto, or is under 21 years of age while having alcohol or other drugs in
> such person's system; (B) the person had been placed under arrest, was in custody or had

6

been involved in a vehicle accident or collision; (C) a law enforcement officer had presented the person with the oral and written notice required by K.S.A. 8-1001, and amendments thereto; and (D) the result of the test showed that the person had an alcohol concentration of .08 or greater in such person's blood or breath."

In addition, K.S.A. 8-1002(b) provides that "certification shall be complete upon signing, and no additional acts of oath, affirmation, acknowledgment or proof of execution shall be required. The signed certification or a copy . . . thereof shall be admissible in evidence in all proceedings brought pursuant to this act. . . ."

Moreover, K.S.A. 8-1002(a)(3) requires:

"With regard to failure of a breath test, in addition to those matters required to be certified under subsection (a)(2), that: (A) The testing equipment used was certified by the Kansas department of health and environment; (B) the testing procedures used were in accordance with the requirements set out by the Kansas department of health and environment; and (C) the person who operated the testing equipment was certified by the Kansas department of health and environment to operate such equipment."

Furthermore, K.S.A. 8-1002(d) lists the information that must be included in the certification:

"In addition to the information required by subsection (a), the law enforcement officer's certification and notice of suspension shall contain the following information: (1) The person's name, driver's license number and current address; (2) the reason and statutory grounds for the suspension; (3) the date notice is being served and a statement that the effective date of the suspension shall be the 30th day after the date of service; (4) the right of the person to request an administrative hearing; and (5) the procedure the person must follow to request an administrative hearing."

7

Finally, K.S.A. 8-1002(f) states that "[i]f the requirements of subsection (a) are not met, the division shall dismiss the administrative proceeding and return any license surrendered by the person."

After filling out and signing the DC-27 form, the law enforcement officer must "serve upon the person notice of suspension of driving privileges . . . ." K.S.A. 8-1002(c). Substantial compliance with this service requirement satisfies K.S.A. 8-1002(c). *Byrd v. Kansas Dept. of Revenue*, 43 Kan. App. 2d 145, 154, 221 P.3d 1168 (2010), *aff'd* 295 Kan. 900, 287 P.3d 232 (2012). Likewise, "it is generally recognized that substantial compliance with statutory notice provisions will usually be sufficient. To substantially comply with the requirements of the statute, a notice must be sufficient to advise the party to whom it is directed of the essentials of the statute." *Barnhart v. Kansas Dept. of Revenue*, 243 Kan. 209, 213, 755 P.2d 1337 (1988).

Here, the deficiencies are not in the manner of service of the DC-27 form. Rather, we find that there are multiple statutory deficiencies on the face of the DC-27 form that was actually given to Stutsman. It is undisputed that Exhibit 2—the version of the DC-27 form provided to Stutsman—does not match the other two versions of the DC-27 form admitted into evidence. The Kansas Department of Revenue argues—and the district court evidently believed—that these deficiencies can be excused because the officer "went back and wrote over what faint transfer . . . [existed] from the original copy so that it was legible[.]" Even if we assume this is true, it does not explain why the officer would have failed to check the pertinent boxes, failed to initial were as appropriate on the lines provided, or failed to sign the version given to Stutsman.

It is undisputed that Exhibits 3 and 4 are duplicates of the same document. On these versions of the DC-27, Officer Myles' initials appear 11 times down the left-hand side, multiple boxes are checked, and his signature is on the line provided near the

8

bottom of the page. However, Exhibit 2—which is the version of the DC-27 actually served on Stutsman—is substantially different than the other two trial exhibits.

On its face, the handwriting on Exhibit 2 appears to be different from the handwriting on Exhibits 3 and 4. Regardless, even if we accept the premise that Officer Myles was the one who wrote on Exhibit 2—which appears unlikely—he failed to include essential information required by K.S.A. 8-1002. We also note that at the de novo hearing, the State did not object to the admission of Exhibit 2 nor did it challenge that it was indeed the version of the DC-27 that was provided to Stutsman.

As indicated above, Exhibit 2 does not contain:

- the officer's initials in the spaces provided on the left side of the form,
- any checkmarks in the boxes in paragraph 4 to indicate whether the form was completed because of a test refusal or a test result,
- any checkmarks in the boxes provided in paragraph 5 to indicate the reason for the contact or stop,
- any checkmarks in the boxes provided in paragraph 6 to indicate the reasonable grounds to believe Stutsman was operating or attempting to operate a motor vehicle, and
- the signature of a law enforcement officer.

Although we acknowledge that substantial compliance by a law enforcement officer is sufficient, we do not find these omissions to be mere technicalities. Rather, we find Exhibit 2 to be missing essential information required by K.S.A. 8-1002. Specifically, Exhibit 2 is not certified as required by K.S.A. 8-1002(a), (b), and (d) either with the officer's initials or with his signature. In addition, as we have pointed out, much of the information that the statute requires to be certified is missing completely.

9

Consequently, we conclude that the DC-27 form provided to Stutsman does not comply with the requirements of K.S.A. 8-1002. As a result, we conclude that the Kansas Department of Revenue did not have subject matter jurisdiction to administratively suspend Stutsman's driver's license. Thus, we reverse the district court's decision upholding the administrative suspension.

Reversed.