NOT DESIGNATED FOR PUBLICATION

No. 119,511

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

MATTHEW MORRIS,
*Appellant*,

v.

KANSAS DEPARTMENT OF REVENUE,
*Appellee*.

MEMORANDUM OPINION

Appeal from Johnson District Court; RHONDA K. MASON, judge. Opinion filed July 24, 2020. Affirmed.

*Thomas J. Bath Jr.*, of Bath & Edmonds, P.A., of Overland Park, for appellant.

*Joanna Labastida*, of Legal Services Bureau, Kansas Department of Revenue, for appellee.

Before ARNOLD-BURGER, C.J., STANDRIDGE and POWELL, JJ.

POWELL, J.: The Kansas Department of Revenue (KDOR) administratively suspended Matthew Morris' driver's license following his blood alcohol breath test failure. Morris requested an administrative hearing at which the suspension was affirmed. Morris then sought de novo judicial review in the district court, and, after a trial on stipulated facts, the district court upheld the suspension. Morris now appeals, challenging his suspension on several grounds. We affirm.

1

On March 24, 2017, Officer Matthew Morrill of the Prairie Village Police Department initiated contact with Morris, who was in a stopped, running vehicle in the middle of the roadway in Johnson County, Kansas. After investigating, Morrill believed Morris was operating his vehicle while under the influence of alcohol. Morris failed field sobriety tests, including a preliminary breath test, and, as a result, Morrill arrested Morris.

At the station, Morris was presented, both orally and in writing, the Amended Implied Consent Form, revised February 26, 2016 (DC-70), by Morrill. Prior to February 26, 2016, the DC-70 contained language threatening criminal prosecution for any refusal of breath, blood, or urine tests. However, this language was removed from the revised DC-70 to reflect the holdings in Kansas Supreme Court opinions that the newly omitted language was unconstitutional. Morris failed the breath test and, as a result, KDOR suspended Morris' driving privileges.

Morrill completed and certified the "Officer's Certification and Notice of Suspension" (DC-27). The certified form stated: "[T]he person was presented oral and written notice as required by K.S.A. 8-1001(k) and amendments thereto."

Morris requested an administrative hearing, at which KDOR affirmed the suspension of his driver's license. Morris then petitioned for de novo judicial review in the district court.

Before the district court, Morris filed a motion for summary judgment, arguing KDOR lacked subject matter jurisdiction, the DC-70 did not substantially comply with K.S.A. 8-1001, the use of the word "require" in the DC-70 invalidated his consent, and his due process rights were violated. The district court rejected Morris' arguments and

2

denied this motion. After a trial on stipulated facts, the district court denied Morris' petition.

Morris now appeals.

ANALYSIS

On appeal, Morris raises three arguments. First, he argues the officer improperly certified the DC-27 because he did not provide Morris all the notices in K.S.A. 2016 Supp. 8-1001(k) and this improper certification deprived KDOR of subject matter jurisdiction to suspend his driver's license. Second, Morris argues the district court erred in holding that the use of the word "require" in the DC-70 did not invalidate his consent to the breath test. Third, Morris argues the district court erred in holding that the DC-70 notices provided to Morris substantially complied with K.S.A. 2016 Supp. 8-1001(k). To aid us in addressing Morris' contentions, we examine his first and third issues first.

I.      DID THE REVISED DC-70 SUBSTANTIALLY COMPLY WITH K.S.A. 2016 SUPP. 8-1001, AND DID ANY ALLEGED NONCOMPLIANCE DEPRIVE KDOR OF SUBJECT MATTER JURISDICTION TO SUSPEND MORRIS' DRIVER'S LICENSE?

Two of Morris' arguments on appeal are nested together. At the heart of his first and third arguments on appeal is his assertion that the DC-70 notices provided to him did not comply with K.S.A. 2016 Supp. 8-1001(k) because they omitted portions of the notices required to be given under the implied consent statute. Because of this noncompliance, he argues his driver's license was suspended in error and KDOR did not have subject matter jurisdiction to suspend his driver's license. Because resolution of both arguments requires the same analysis—whether the DC-70 substantially complies with K.S.A. 2016 Supp. 8-1001—we address them together.

Whether a DC-70 implied consent advisory form complies with statutory requirements is a question of statutory interpretation and thus a question of law subject to unlimited review. See *Shrader v. Kansas Dept. of Revenue*, 296 Kan. 3, 6, 290 P.3d 549 (2012).

The parties agree the DC-70 read to Morris did not contain all the language from K.S.A. 2016 Supp. 8-1001(k). The following language was omitted:

"(k) Before a test or tests are administered under this section, the person shall be given oral and written notice that:

. . . .

(2) the opportunity to consent to or refuse a test is not a constitutional right;

. . . .

(4) if the person refuses to submit to and complete any test of breath, blood or urine hereafter requested by a law enforcement officer, the person may be charged with a separate crime of refusing to submit to a test to determine the presence of alcohol or drugs, which carries criminal penalties that are greater than or equal to the criminal penalties for the crime of driving under the influence, if such person has:

(A) Any prior test refusal as defined in K.S.A. 8-1013, and amendments thereto, which occurred: (i) On or after July 1, 2001; and (ii) when such person was 18 years of age or older; or

(B) any prior conviction for a violation of K.S.A. 8-1567 or 8-2,144, and amendments thereto, or a violation of an ordinance of any city or resolution of any county which prohibits the acts that such section prohibits, or entering into a diversion agreement in lieu of further criminal proceedings on a complaint alleging any such violations, which occurred: (i) On or after July 1, 2001; and (ii) when such person was 18 years of age or older." K.S.A. 2016 Supp. 8-1001(k)(2), (4).

4

Although K.S.A. 2016 Supp. 8-1001(k) requires this language, it was omitted because in 2016 the Kansas Supreme Court held that the omitted language was unconstitutional. See *State v Ryce*, 303 Kan. 899, 963, 368 P.3d 342 (2016) (*Ryce I*), *aff'd on reh'*g 306 Kan. 682, 396 P.3d 711 (2017) (*Ryce II*); *State v. Nece*, 303 Kan. 888, Syl., 367 P.3d 1260 (2016) (*Nece I*), *aff'd on reh'g* 306 Kan. 679, 396 P.3d 709 (2017) (*Nece II*). The day the Kansas Supreme Court issued these opinions in 2016, the Kansas Attorney General promulgated a revised DC-70 for law enforcement to use that omitted the unconstitutional language. Morris was advised under the new, post-*Ryce I* and *Nece I* DC-70 form. Despite the revised notice's omissions of the wording in K.S.A. 2016 Supp. 8-1001(k)(2) and (4), the district court held that the DC-70 substantially complied with the statute.

      A.     *Did the DC-70 substantially comply with K.S.A. 2016 Supp. 8-1001?*

The issue Morris raises has been addressed numerous times by our court. And in each of those cases, panels of this court have consistently concluded that an implied consent advisory based on the revised DC-70—with its omission of certain statutory warnings invalidated by *Ryce I*—constituted substantial compliance with K.S.A. 2016 Supp. 8-1001(k). See *Reilly v. Kansas Dept. of Revenue*, No. 120,840, 2020 WL 2089635, at *6 (Kan. App. 2020) (unpublished opinion); *Scott v. Kansas Dept. of Revenue*, No. 120,717, 2020 WL 2296962, at *2-4 (Kan. App. 2020) (unpublished opinion), *petition for rev. filed* June 8, 2020; *Leivian v. Kansas Dept. of Revenue*, No. 119,249, 2019 WL 166541, at *4-5 (Kan. App. 2019) (unpublished opinion); *Ackerman v. Kansas Dept. of Revenue*, No. 118,128, 2018 WL 3673168, at *2-3 (Kan. App. 2018) (unpublished opinion), *rev. denied* 310 Kan. 1061 (2019); *Bynum v. Kansas Dept. of Revenue*, No. 117,874, 2018 WL 2451808, at *3 (Kan. App. 2018) (unpublished opinion); *Cameron v. Kansas Dept. of Revenue*, No. 118,788, 2018 WL 6005402, at *2-3 (Kan. App. 2018) (unpublished opinion), *rev. denied* 310 Kan. 1061 (2019); *McGinnis v. Kansas Dept. of Revenue*, No. 118,326, 2018 WL 5728375, at *5-6 (Kan. App. 2018)

(unpublished opinion); *State v. Barta*, No. 117,990, 2018 WL 1883878, at *5 (Kan. App. 2018) (unpublished opinion); *White v. Kansas Dept. of Revenue*, No. 117,956, 2018 WL 1769396, at *6 (Kan. App. 2018) (unpublished opinion); *Williamson v. Kansas Dept. of Revenue*, No. 118,325, 2018 WL 5730137, at *3-6 (Kan. App. 2018) (unpublished opinion). While no panel's decision binds another, the soundness of the reasoning in these cases, as well as the uniformity of the decisions, persuade us they are correct. See *State v. Fahnert*, 54 Kan. App. 2d 45, 56, 396 P.3d 723 (2017). Thus, we adopt their reasoning that a law enforcement officer is not required to strictly adhere to the statutory notice provisions given the state of the law.

"Any person who operates or attempts to operate a vehicle within this state is deemed to have given consent, subject to the provisions of this article, to submit to one or more tests of the person's blood [or] breath." K.S.A. 2016 Supp. 8-1001(a). But before a test or tests is administered, "the person shall be given oral and written notice" of nine provisions listed by the statute. K.S.A. 2016 Supp. 8-1001(k). Those provisions, known as the implied consent advisories, include a requirement the person be informed that there was not a constitutional right to refuse the test and that refusing to submit to the test could result in the individual facing a separate criminal charge. K.S.A. 2016 Supp. 8-1001(k)(2), (4).

However, as discussed above, the Kansas Supreme Court held that a driver has a constitutional right to refuse to submit to the requested test, undermining the validity of K.S.A. 2016 Supp. 8-1001(k)(2). See *Ryce I*, 303 Kan. at 944; *Ryce II*, 306 Kan. at 683. Additionally, K.S.A. 2016 Supp. 8-1001(k)(4)—the notice the individual could face separate criminal charges for refusing to submit to a test—is a reference to K.S.A. 2016 Supp. 8-1025, which criminalized a person's refusal to submit to a breath test. In *Ryce I*, the Kansas Supreme Court held K.S.A. 2014 Supp. 8-1025 unconstitutional "because it allows the State to criminally punish those who refuse a search that is *not* grounded in the Fourth Amendment." 303 Kan. at 963. Subsequently, the Kansas Supreme Court held that

6

providing the notice in K.S.A. 2014 Supp. 8-1001(k)(4) to an individual was "inaccurate and cannot serve as the basis for voluntary consent." *Nece I*, 303 Kan. 888, Syl.; see *Nece II*, 306 Kan. 679, Syl.

Based on these holdings, law enforcement began providing revised implied consent advisories to suspected intoxicated drivers. The form in this case, the DC-70 with a revised date of February 2016, does not inform the individual that he or she does not have a constitutional right to refuse to submit to the test, nor does it inform the individual that he or she can be subject to criminal charges for refusing to submit to the breath test, omitting the notice requirements of K.S.A. 2016 Supp. 8-101(k)(2) and (4).

Two legal principles are in play here: substantial compliance with the statute and the DUI statute's severability, or savings, clause. First, the Legislature specifically directed that the statutes governing driving under the influence "is remedial law and shall be liberally construed to promote public health, safety and welfare." K.S.A. 2016 Supp. 8-1001(v); *Byrd v. Kansas Dept. of Revenue*, 43 Kan. App. 2d 145, 150, 221 P.3d 1168 (2010), *aff'd* 295 Kan. 900, 287 P.3d 232 (2012).

> "The purpose of the implied consent advisory is to inform a driver of the law regarding submission to a requested test and the potential consequences arising from a test failure or test refusal. If the information provided by statute is unconstitutional and unenforceable, the purpose of the implied consent is subverted if the arresting officer provides a driver with notice of those unconstitutional and unenforceable provisions." *Leivian*, 2019 WL 166541, at *5.

Because this statute is remedial, the Kansas Supreme Court held: "An implied consent advisory [DC-70] need not mirror the statutory language; substantial compliance with [ K.S.A. 2014 Supp. 8-1001(k)] is usually sufficient." *Creecy v. Kansas Dept. of Revenue*, 310 Kan. 454, 472, 447 P.3d 959 (2019); see *Meats v. Kansas Dept. of Revenue*, 310 Kan. 447, 451, 447 P.3d 980 (2019). "Substantial compliance is construed

to mean that the notice given must be sufficient to advise the party of the essentials of the statute." *Creecy*, 310 Kan. at 472. Thus, when substantial compliance is applied to the notice requirements, the notice given by the officer need not be the exact wording of K.S.A. 8-1001; the notice only "must be sufficient to advise the party to whom it is directed of the essentials of the statute." *Barnhart v. Kansas Dept. of Revenue*, 243 Kan. 209, 213, 755 P.2d 1337 (1988).

An application of the substantial compliance principle leads to the implication of this act's severability clause. K.S.A. 8-1007 clearly directs:  "[I]f any clause, paragraph, subsection or section of this act shall be held invalid or unconstitutional, it shall be conclusively presumed that the legislature would have enacted the remainder of this act without such invalid or unconstitutional clause, paragraph, subsection or section." As such, we are to presume the Legislature would have enacted K.S.A. 2016 Supp. 8-1001 without the omitted provisions from Morris' DC-70 that were found unconstitutional. Here, the remaining essentials of the notice statute were provided to Morris by the officer. The officer properly provided Morris with the notice as required by K.S.A. 2016 Supp. 8-1001(k) but made necessary modifications to the notice based on the state of the law at the time of Morris' drunk driving arrest and subsequent implied consent notice. Morrill gave Morris notice of the implied consent advisories that substantially complied with the statute.

As other panels have held, because the provisions of K.S.A. 2016 Supp. 8-1001(k)(2) and (4) are unconstitutional and unenforceable, they are no longer essential to the statute. Therefore, law enforcement in this case substantially complied with the statute by providing the implied consent notices from the revised DC-70. This conclusion is also bolstered by the severability clause in K.S.A. 8-1007. Thus, we reject Morris' argument that the notices given by Morrill failed to comply with K.S.A. 2016 Supp. 8-1001(k).

B.      *Did KDOR have subject matter jurisdiction to revoke Morris' license?*

Morris also argues that the district court erred in concluding KDOR had subject matter jurisdiction to suspend his license because Morrill failed to provide all the implied consent advisories in K.S.A. 2016 Supp. 8-1001(k). As a result of the omissions of the statute's required advisories, Morris contends the DC-27 was not accurately certified and, therefore, KDOR did not have subject matter jurisdiction to suspend his driving privileges.

Morris only challenges one portion of the DC-27:  Morrill's certification that Morris was presented "with the oral and written notice required by K.S.A. 8-1001." K.S.A. 2016 Supp. 8-1002(a)(1). On a basic level, Morris' argument here is the same as in his other two arguments on appeal that the revised DC-70 does not substantially comply with the notice requirements of the implied consent statute.

K.S.A. 2016 Supp. 8-1002(f) directs KDOR to review the DC-27 to determine whether it meets the requirements of K.S.A. 2016 Supp. 8-1002(a) before proceeding with a suspension of a driver's license. If an officer fails to properly certify the DC-27 with all the requirements of K.S.A. 2016 Supp. 8-1002(a), KDOR has an independent duty to dismiss the action. *Wall v. Kansas Dept. of Revenue*, 54 Kan. App. 2d 512, 515, 401 P.3d 670 (2017).

We conclude Morrill gave Morris notice of the implied consent advisories that substantially complied with the statute and, therefore, Morrill properly certified the DC-27 when he indicated on that form that Morris received the DC-70. Thus, we see no lack of subject matter jurisdiction by KDOR to suspend Morris' driver's license.

II.     DID THE ARRESTING OFFICER ERRONEOUSLY ADVISE MORRIS HE WAS "REQUIRED" TO SUBMIT TO TESTING?

Morris also challenges the paragraph of the revised DC-70 that advised: "Kansas Law [K.S.A. 2016 Supp. 8-1001(k)(1)] requires you to submit to and complete one or more tests of breath, blood, or urine to determine if you are under the influence of alcohol or drugs or both." He contends this is a misstatement of law, arguing that nothing in K.S.A. 2016 Supp. 8-1001 requires drivers to submit to a test because they are ultimately given the choice whether to ratify their implied consent.

The parties seem to agree that testing under the implied consent laws is voluntary but essentially disagree about the effect of the term "require" as used in the statute. K.S.A. 2016 Supp. 8-1001(k)(1) provides:

> "(k) Before a test or tests are administered under this section, the person shall be given oral and written notice that:

> (1) Kansas law requires the person to submit to and complete one or more tests of breath, blood or urine to determine if the person is under the influence of alcohol or drugs, or both."

Morris claims subpart (k)(1) is itself incorrect because other sections require the officer to "request" the person submit to a test after providing the advisory information. See K.S.A. 2016 Supp. 8-1001(b), (m). He cites as support *Whigham v. Kansas Dept. of Revenue*, No. 117,043, 2018 WL 1884742 (Kan. App. 2018) (unpublished opinion), *petition for rev. granted* November 30, 2018. Whigham made the same argument as Morris does before us now: The use of "require" in the DC-70 advisories is a misstatement of law based on the use of "request" in other provisions of the statute. Morris also repeats Whigham's argument that we cannot overlook the Legislature's choice

10

to switch from directory language to mandatory language when considering legislative intent.

The *Whigham* panel considered the definitions of "require" and other forms of that term, noting although "the term required can be read to mean something similar to a request," the definitions provided by KDOR as support "mostly include definitions that insinuate something mandatory." 2018 WL 1884742, at *5. The panel discussed the proposed 2018 legislative amendments to K.S.A. 8-1001(k)—which would replace "require" with "allow"—calling the substituted language "comparatively a more directional term rather than a mandatory term, suggesting the original use of required was intended as a mandatory term." 2018 WL 1884742, at *5-6. Ultimately, the panel concluded Whigham's argument about legislative intent was more persuasive than KDOR's but was "foreclosed" by the arresting officer's "good-faith reliance on the advisories." 2018 WL 1884742, at *6.

In response to Morris' reliance on *Whigham*, KDOR contends interpreting "required" as a mandatory term "would insert more ambiguity in the interpretation of the statute" because the statute consistently allows a driver to refuse a test. KDOR focuses on the use of "required" in context, asserting the other provisions of the DC-70 must be considered because they make it clear that a driver ultimately gets to choose whether to refuse a test.

We are not bound by the *Whigham* panel's decision. See *Fahnert*, 54 Kan. App. 2d at 56. The first paragraph DC-70, of which Morris complains, reads: "Kansas law (K.S.A. 8-1001) requires you to submit to and complete one or more tests of breath, blood, or urine to determine if you are under the influence of alcohol or drugs or both." This language is a nearly verbatim recitation of K.S.A. 2016 Supp. 8-1001(k)(1): "Kansas law requires the person to submit to and complete one or more tests of breath,

blood or urine to determine if the person is under the influence of alcohol or drugs, or both."

That said, the relevant paragraph should not be read in isolation. As the district court noted, the other provisions of K.S.A. 2016 Supp. 8-1001 make it clear that testing under the implied consent laws is voluntary. The statute consistently directs law enforcement officers to "request a person to submit to a test." See K.S.A. 2016 Supp. 8-1001(b), (c), (h), (i), (m). Likewise, officers must give the implied consent advisories—disregarding the provisions invalidated as unconstitutional—which reference the driver's ability to refuse testing and potential consequences of test refusal or failure. See K.S.A. 2016 Supp. 8-1001(k)(5)-(9). Reading these provisions together, the Legislature plainly intended for "require" in subsection (k)(1) to reflect that licensed drivers are deemed to have consented to testing but can refuse and face a civil penalty as if they had failed the test. See K.S.A. 2016 Supp. 8-1001(k)(5)-(6). Ultimately, the statute gives the driver a choice whether to refuse testing. Comparing the relevant statutory provisions and the notices in the DC-70, it is clear the DC-70 adequately indicates a test is voluntary and may be refused. Comparisons of the relevant portions of K.S.A. 2016 Supp. 8-1001(k) and the revised DC-70 are as follows:

| K.S.A. 2016 Supp. 8-1001 Provisions | Revised DC-70 Notice |
|---|---|
| K.S.A. 2016 Supp. 8-1001(k)(5):<br><br>    "[*I*]*f* the person refuses to submit to and complete any test of breath, blood or urine hereafter *requested* by a law enforcement officer, the person's driving privileges will be suspended for one year for the first or subsequent occurrence." (Emphases added.) | Paragraph 3:<br><br>    "3. *If* you refuse to submit to and complete any test of breath, blood or urine hereafter *requested* by a law enforcement officer, your driving privileges will be suspended for 1 year." (Emphases added.) |

| K.S.A. 2016 Supp. 8-1001(k)(6): | Paragraphs 4 and 5: |
|---|---|
| "[*I*]*f* the person submits to and completes the test or tests and the test results show:<br><br>     (A) An alcohol concentration of .08 or greater, the person's driving privileges will be suspended for 30 days for the first occurrence and one year for the second or subsequent occurrence; or<br><br>     (B) an alcohol concentration of .15 or greater, the person's driving privileges will be suspended for one year for the first or subsequent occurrence." (Emphasis added.) | "4. *If* you submit to a breath or blood test requested by a law enforcement officer and produce a completed test result of .15 or greater, your driving privileges will be suspended for 1 year." (Emphasis added.)<br><br>"5. *If* you submit to a breath or blood test requested by a law enforcement officer and produce a completed test result of .08 or greater, but less than .15, the length of suspension will depend on whether you have a prior occurrence. A prior occurrence is a prior test refusal, test failure or conviction or diversion for an alcohol or drug related conviction as defined in K.S.A. 8-1013, and amendments thereto, or any combination thereof, whether before, on or after July 1, 2001." (Emphasis added.) |
| K.S.A. 2016 Supp. 8-1001(k)(7): | Paragraph 8: |
| "[*R*]*efusal to submit* to testing may be used against the person at any trial on a charge arising out of the operation or attempted operation of a vehicle while under the influence of alcohol or drugs, or both." (Emphasis added.) | "8. *Refusal to submit* to testing may be used against you at any trial on a charge arising out of the operation or attempted operation of a vehicle while under the influence of alcohol or drugs, or both." (Emphasis added.) |

Additionally, the back of the revised DC-70 states: "After providing a copy of this form to the person and reading all applicable notices, the officer should then *request* that the person submit to a test or tests." (Emphasis added.) See K.S.A. 2016 Supp. 8-1001(m) ("After giving the foregoing information, a law enforcement officer shall *request* the person to submit to testing." [Emphasis added.]). The form then asks the driver whether he or she will take a breath, blood, or urine test, with a box next to each option for the

driver to choose. After this, the form gives the driver the option to decline testing entirely.

For these reasons, we find the district court did not err by determining the revised DC-70 provided to Morris substantially complied with Kansas implied consent laws. The use of the term "require" in one part of the DC-70 mirrors the statutory language, which as a whole makes it clear that a driver's choice to submit to testing under the implied consent framework is voluntary.

Affirmed.